# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2026

Lyle W. Cayce
Clerk

————————

No. 25-50246

————————

LA UNION DEL PUEBLO ENTERO; SOUTHWEST VOTER
REGISTRATION EDUCATION PROJECT; MEXICAN AMERICAN BAR
ASSOCIATION OF TEXAS; TEXAS HISPANICS ORGANIZED FOR
POLITICAL EDUCATION; JOLT ACTION; WILLIAM C.
VELASQUEZ INSTITUTE; FIEL HOUSTON, INCORPORATED;
FRIENDSHIP-WEST BAPTIST CHURCH; TEXAS IMPACT; JAMES
LEWIN,

*Plaintiffs—Appellees*,

*versus*

GREGORY W. ABBOTT, *in his official capacity as Governor of Texas*; JANE
NELSON, *in her official capacity as Texas Secretary of State*; STATE OF
TEXAS; WARREN K. PAXTON, *in his official capacity as Attorney General
of Texas*; HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY
REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL
COMMITTEE,

*Defendants—Appellants*,

REPUBLICAN NATIONAL COMMITTEE

*Movant—Appellant*,

——————————————————————

REVUP-TEXAS,

*Plaintiff—Appellee*,

*versus*

KEN PAXTON, *Texas Attorney General*,

*Defendant— Appellant*,

_____

DELTA SIGMA THETA SORORITY, INCORPORATED; THE ARC OF TEXAS,

*Plaintiffs—Appellees*,

*versus*

GREGORY WAYNE ABBOTT, *in his official capacity as the Governor of Texas*; WARREN KENNETH PAXTON, JR., *in his official capacity as the Attorney General of Texas*,

*Defendants—Appellants*.

_____

Appeals from the United States District Court
for the Western District of Texas
USDC Nos. 1:21-CV-780, 1:21-CV-786,
5:21-CV-844, 5:21-CV-848, 5:21-CV-920

_____

Before HIGGINBOTHAM, SMITH, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

It has long been established that mail-in ballots are prone to fraud. *See, e.g.*, *Veasey v. Perry*, 71 F. Supp. 3d 627, 676 (S.D. Tex. 2014) ("Mail-in ballots are not secure."), *aff'd in relevant part*, 830 F.3d 216, 256 (5th Cir. 2016) (en banc). That is why voting by mail jeopardizes election integrity and democracy itself.

In 2021, the Texas Legislature enacted the Election Protection and Integrity Act of 2021, otherwise known as Texas Senate Bill 1 ("S.B. 1").

2

No. 25-50246

That law imposed new security measures on a host of voting practices—including, most importantly, mail-in ballots and ballot harvesting. As so often happens in modern America, a federal district judge then countermanded the Legislature with sweeping facial injunctions. We have been staying, vacating, and reversing those injunctions ever since. *See, e.g.*, *United States v. Paxton*, No. 23-50885 (5th Cir. Dec. 15, 2023), ECF No. 80-1 (granting stay pending appeal of injunction under the Civil Rights Act of 1964); *United States v. Paxton*, 148 F.4th 335 (5th Cir. 2025) (reversing order issuing permanent injunction under the Civil Rights Act of 1964); *La Union Del Pueblo Entero v. Abbott*, No. 24-50826 (5th Cir. Apr. 1, 2025), ECF No. 246-2 (granting stay pending appeal of injunction under § 208 of the Voting Rights Act); *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273 (5th Cir. 2025) (reversing order issuing permanent injunction under § 208 of the Voting Rights Act), *cert. denied sub nom.*, *La Union v. Paxton*, 2026 WL 1855021 (U.S. June 29, 2026) (No. 25-904), *and cert. denied sub nom.*, *OCA – Greater Hou. v. Paxton*, 2026 WL 1855121 (U.S. June 29, 2026) (No. 25-916); *La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404 (5th Cir. 2024) (granting stay pending appeal of injunction under the First and Fourteenth Amendments); *La Union del Pueblo Entero v. Abbott*, 167 F.4th 743 (5th Cir. 2026) (reversing order issuing permanent injunction under the First and Fourteenth Amendments).[1]

---

[1] The above list does not tell the full story. Across the appeals from this consolidated lawsuit, we have reversed the district court on everything—from denials of motions to intervene, to denials of legislative privilege, to denials of motions to dismiss on sovereign immunity grounds. *See, e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) (reversing denial of local and national Republican Committees' motion to intervene as defendants); *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023) (reversing denial of legislative privilege to individual legislators); *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024) (reversing denial of legislative privilege to defendant Republican Committees for communications with the Texas Legislature); *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) (dismissing claims against District Attorney Kim Ogg under *Ex parte Young* on sovereign immunity grounds); *La Union del Pueblo Entero v. Nelson*,

Today, we do it again. In this case, the district court held that nine provisions of S.B. 1 were inconsistent with the Americans with Disabilities Act and the Rehabilitation Act of 1973. We disagree and reverse.

I

The Texas Legislature drafted S.B. 1 to "reduce the likelihood of fraud in the conduct of elections" and "ensure that all legally cast ballots are counted." S.B. 1 § 1.04 (codified at TEX. ELEC. CODE § 1.0015). The law requires voters who vote by mail to provide an identification number or social security number that matches the State's records. S.B. 1 §§ 5.02–.03, .07 (codified at TEX. ELEC. CODE §§ 84.002(a)(1-a), 84.011(a)(3-a), 86.001(f)). The law also includes so-called "curative provisions" that offer voters several means of correcting defective ballots. S.B. 1 §§ 5.06, .10, .12 (codified at TEX. ELEC. CODE §§ 84.035(b), 86.015(c)(4), 87.0271). Senate Bill 1 further regulates voter assistance. It requires those assisting voters to sign an oath that they did not coerce or intimidate the voters who they assisted, indicate their relationship to the voter, and disclose whether they received compensation from a candidate, campaign, or political committee. S.B. 1 §§ 6.03–.05, .07 (codified at TEX. ELEC. CODE §§ 64.0322, 64.034, 86.010(e), 86.013(b)(3)). And it restricts compensation for certain electioneering activities. S.B. 1 §§ 6.06, 7.04 (codified at TEX. ELEC. CODE §§ 86.0105(a), 86.0105(c), 276.015(b), 276.015(c)).

The plaintiffs[2] are serial litigants when it comes to challenging the provisions of S.B. 1. *See La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273,

_____

163 F.4th 239 (5th Cir. 2025) (similar as to certain claims against Attorney General Ken Paxton and Secretary of State Jane Nelson). In short, we have been playing an exhausting game of Whac-A-Mole to correct the district court's mishandling of this case.

[2] The three plaintiff groups' members are as follows:

- HAUL Plaintiffs: The Arc of Texas and Delta Sigma Theta Sorority, Inc.

No. 25-50246

284 n.2 (5th Cir. 2025) ("*LUPE*"). Even before S.B. 1 was enacted, the plaintiffs filed suit to challenge the soon-to-be law. The plaintiffs argue that the identification provisions, curative provisions, and voter-assistance provisions violate Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act of 1973.

Following a bench trial, the district court permanently enjoined the Texas Secretary of State and various local officials from enforcing nine provisions of S.B. 1.[3] Defendants timely appealed.

## II

We address the (A) identification provisions, (B) voter-assistance provisions, and (C) compensation provisions.

## A

The plaintiffs' challenge to the identification provisions of S.B. 1 fails for lack of standing. To establish standing, the plaintiffs must show an injury traceable to the defendant's conduct and redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The plaintiff organizations in this case may establish standing either by showing they can sue on behalf of their members (associational standing) or sue in their own right (organizational standing). *Texas State LULAC v. Elfant*, 52 F.4th 248,

---

- OCA Plaintiffs: REV UP Texas.
- LUPE Plaintiffs: La Unión del Pueblo Entero, the Southwest Voter Registration Education Project, Texas Impact, Jolt Action, MABA Texas, and FIEL Houston Inc.

[3] The defendant local election officials include the Bexar County Elections Administrator, Harris County Clerk, Dallas County Elections Administrator, and El Paso County Elections Administrator.

No. 25-50246

253 (5th Cir. 2022). The plaintiffs try and fail under both theories. We address (1) associational standing and then (2) organizational standing.

1

To establish associational standing, a plaintiff organization must show that a specific member has suffered an injury traceable to the challenged provision. *See NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010). When an organization seeks injunctive relief, the member who alleges the injury must show a "substantial risk" that future injury will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation omitted).

The district court found only one member injured by the identification provisions: Yvonne Yvette Iglesias. Iglesias is blind in one eye and has paraplegia and diabetes. She had applied to vote by mail in the 2022 primary and general elections, her applications were rejected because she failed to include an identification number, and her curative attempts were unsuccessful because she still did not include an identification number.

The record does not support a "substantial risk" that Iglesias will suffer future injury. Iglesias testified that she has since learned more about the voter-identification requirements and the options available to cure a defective mail-in-ballot application. She agreed that her newfound knowledge makes her "better able" to successfully apply for a mail-in ballot and vote by mail. ROA.33558–59.

Nor can the plaintiff organizations identify any other member who faces a substantial risk of future harm because of the identification provisions. For example, Teri Saltzman is a legally blind voter. She testified that her mail-in-ballot application was rejected during the March 2022 primary election and that her blindness caused difficulty using the online ballot tracker to cure her application. But her struggles were quickly resolved; she voted in the November 2022 general election without incident. Similarly,

No. 25-50246

Stella Guerrero-Mata has limited vision. Her mail-in ballot was rejected because she forgot to put her identification number on the carrier envelope. But she put the correct identification information on her application for a mail-in ballot, and is now aware that the carrier envelopes contain a space for her identification number in future elections. None of these members has shown a "substantial risk" of disenfranchisement.

Finding no member with a threat of future injury, the district court turned to local election officials' concerns that voters would "continue to face problems" in future elections. ROA.40941. The district court credited election officials' testimony that elderly voters, voters with disabilities, and voters newly eligible to vote by mail are more likely to be confused by the new requirements and will likely have their ballots rejected in future elections.

But the evidence since S.B. 1's enactment says otherwise. The number of mail-in application or mail-in ballot rejections caused by missing or mismatched identification numbers dropped from 11 or 12 percent to 2.7 percent in just eight months. And officials testified that the numbers will "continue to decline" because Texas's identification database will "continue to get more robust," and voters will "get more used to" the new procedures. ROA.46413. That's far from the "substantial risk" of injury the district court prophesied.

2

Next, organizational standing. The plaintiffs argue that the identification provisions force them to "scale back their pre-existing efforts [with voter education and assistance] to focus volunteers and resources on helping voters understand and attempt to comply with the new requirement—through podcasts, flyers, and volunteer training and deployment." Red Br. at 41–42.

This argument is foreclosed. In *Alliance for Hippocratic Medicine*, the Supreme Court held that an organization's diversion of resources in response to a defendant's action cannot confer standing. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024); *see Deep S. Ctr. for Env't Just. v. EPA*, 138 F.4th 310, 317–20 (5th Cir. 2025); *United States v. Texas*, 173 F.4th 659, 665–67 (5th Cir. 2026) (en banc). So too here.

## B

The plaintiffs fare no better with respect to the voter assistance provisions. This court has already rejected the exact same standing arguments from the exact same plaintiffs on the exact same record. *LUPE*, 151 F.4th at 287–88. The arguments are thus foreclosed. *See In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663 (5th Cir. 2012).

The plaintiffs respond that *LUPE* is distinguishable because it arose under the Voting Rights Act, not Title II or the Rehabilitation Act. They argue that the rights protected by the latter statutes are broader, so the standard they must meet to show an imminent threat of harm is "more elastic." Red Br. at 38–39 (quotation omitted).

Not so. The *LUPE* court's logic did not depend on the underlying cause of action. The panel rested its conclusion on the fact that the plaintiffs self-selected out of volunteering based on a non-existent threat of prosecution. *LUPE*, 151 F.4th at 287. Such speculative fear cannot establish an injury or traceability across causes of action.

## C

Finally, the plaintiffs' challenge to the compensation provisions fails. First, as to all defendants save the local prosecutors, the plaintiffs cannot establish standing. Second, as to the local prosecutors, the plaintiffs' claims fail on the merits.

1

The plaintiffs lack standing to sue local election officials, the Attorney General, or the Secretary of State.

The plaintiffs' asserted injuries caused by the threat of prosecution are not traceable to local election officials. Local prosecutors—not local election officials—are "charged with enforcement of the criminal prohibition[s]" in the Election Code. *Lewis v. Scott*, 28 F.4th 659, 664 (5th Cir. 2022). So any potential injury from enforcement of S.B. 1 is the "result of the independent action" of local district attorneys. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 784 (5th Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Similarly, the Attorney General lacks "the ability to 'compel or constrain local officials' to enforce the electioneering laws, nor can he bring his own proceedings to prosecute election-law violators." *Ostrewich v. Tatum*, 72 F.4th 94, 101 (5th Cir. 2023). Any injuries the plaintiffs might have suffered cannot be traced to him.

That leaves the Secretary of State. The plaintiffs' injuries are not traceable to the Secretary because she plays zero role in enforcing the compensation provisions against the plaintiffs. The Secretary "is not empowered to institute criminal or civil prosecutions under these statutes." *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 263 (5th Cir. 2025). She may "refer suspected criminal conduct to the Attorney General," but the Attorney General has "no independent authority to prosecute election-related criminal offenses." *Id.* at 264 (quotation omitted). Obviously, the Secretary cannot "enforce" a criminal provision by referring conduct to another official who also cannot enforce the criminal provision. *See ibid.*

The plaintiffs, for their part, cite the Secretary's role as "chief election officer of the state." Red Br. at 42 (quotation omitted). But that argument proves too much. True, we have permitted challenges to S.B. 1's

identification provisions under the 1964 Voting Rights Act against the Secretary under that theory. *United States v. Paxton*, 148 F.4th 335, 340 (5th Cir. 2025). But it is also true that the Secretary cannot be sued simply because the plaintiffs want a court to rewrite the Texas Election Code—particularly when the Secretary has literally nothing to do with the challenged provisions. That is why we've previously held the Secretary lacks a connection to the enforcement of the compensation provisions because she cannot "effectuate a prosecution" under them. *See Nelson*, 163 F.4th at 262–67. Thus, the plaintiffs' injuries here are not fairly traceable to the Secretary.[4]

2

Finally, we are bound by *LUPE* to hold that the plaintiffs have standing to seek an injunction preventing local prosecutors from enforcing the compensation provisions. *See* 151 F.4th at 289–90. Reaching the merits of that claim, we reject it.

Title II of the ADA and § 504 of the Rehabilitation Act create private rights of action that allow disabled persons to sue public entities for discrimination. A *prima facie* case of discrimination requires showing that the defendant excluded the plaintiff from the services or benefits that the defendant provides by reason of his disability. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004). The plaintiffs' claims fail because defendant local prosecutors are not responsible for providing the benefits of voting. True, the Texas Election Code contains provisions requiring local district attorneys to take action with respect to some aspects of elections—

---

[4] *Nelson* is not controlling because it asked whether the plaintiffs' § 1983 claims against the Secretary were barred by sovereign immunity. 163 F.4th at 266–67. Still, we have noted that the "Article III standing analysis and *Ex parte Young* analysis significantly overlap." *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (quotation omitted); *Nelson*, 163 F.4th at 255–56 (similar). So the *Nelson* analysis remains highly persuasive.

No. 25-50246

namely, to prosecute election-law violations. *See State v. Stephens*, 663 S.W.3d 45, 50–51 (Tex. Crim. App. 2021) (summarizing local prosecutors' constitutional role in election-law prosecutions). But no part of the district attorneys' role is to supervise the administration or provision of voting services to disabled voters. Because the plaintiffs cannot establish a *prima facie* case of disability discrimination against any remaining defendant, their claim fails on the merits.

*        *        *

The bulk of the plaintiffs' claims fail for lack of standing. One fails on the merits. But none justifies interference with the State Legislature's efforts to prevent voter fraud and to protect election integrity.

The district court's decision awarding permanent injunctive relief is REVERSED in its entirety.